# SUPREME JUDICIAL COURT,

### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1869, AT PITTSFIELD.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. JOHN WELLS, ⎬ JUSTICES.
HON. JAMES D. COLT, ⎪
HON. SETH AMES, ⎭

---

## JAMES M. GLASS *vs.* GROVE E. HULBERT.

To a bill in equity to reform an instrument in writing, if the proposed reformation involves the specific enforcement of an oral agreement within the statute of frauds, or the term sought to be added will so modify the instrument as to make it operate to convey an interest or secure a right which can only be conveyed or secured through an instrument in writing, and for which no writing has ever existed, the statute of frauds is a sufficient answer, unless the defendant is estopped to plead it; and the fact that the omission or defect in the instrument, by reason of which it failed to convey the estate or express the obligation which it is sought to make it convey or express, was occasioned by mistake, or by deceit and fraud, will not alone constitute such an estoppel, but there must concur some change in the situation of the plaintiff, by reason of having been induced to enter on the execution of the agreement, or do acts upon the faith of it as if it was executed, with the knowledge and acquiescence of the defendant, either express or implied, for which he will be left without redress if the oral agreement shall be defeated.

A bill in equity, filed by the purchaser of a lot of land after taking the deed and paying the price, sought relief in the matter of his oral agreement for the purchase on the ground of fraud or mistake in three particulars: 1. for that he was induced to orally agree to

maintain the whole fence on one side of the lot, and to consent to a proviso in the deed accordingly, by a false representation of the defendant that a neighbor was bound to maintain the whole fence on another side of it; 2. for that he transferred to the defendant, in part payment of the price, some bonds at par, under the defendant's promise to pay him back the premium which they were worth in the market at the time of the transfer, and the interest then accrued on them, which promise the defendant refused to execute; 3. for that, during the negotiations for selling the lot, the defendant represented to him that it included land which in fact it did not include, and under that misrepresentation he agreed to make the purchase. The prayer was not for a rescission of the contract, but for a decree to compel the defendant, 1. to release the plaintiff from the proviso about the fence; 2. to pay to the plaintiff the premium and interest on the bonds; 3. to convey to the plaintiff the land omitted from the deed by fraud or mistake. The answer denied misrepresentation and set up the statute of frauds. *Held*, 1. as to the proviso about the fence, that the plaintiff's remedy was at law, for the false representation; 2. as to the bonds, that his remedy was also at law, in an action on the promise, or as for an overpayment of the price; 3. as to the additional land, that no decree could be made for its conveyance, in the absence of any evidence to estop the defendant to plead the statute of frauds.

BILL IN EQUITY seeking relief in the matter of a contract relating to land. Issue was joined on the answer, and the case reserved by the chief justice " for the consideration and decision of the full court upon the question whether upon the allegations of the bill the plaintiff is entitled to relief in equity, and whether the plaintiff has not a full, adequate and complete remedy at law; the defendant also relying in his answer upon the statute of frauds." The case is stated in the opinion.

*W. H. Swift*, (*S. W. Bowerman* with him,) for the plaintiff.

*M. Wilcox*, (*W. T. Filley* with him,) for the defendant.

WELLS, J. The plaintiff purchased certain lots of land of the defendant, received a deed, and paid the whole amount of the purchase money. This suit is brought for relief or redress in several particulars, dissimilar in character, but all connected with the alleged oral contract of purchase. He complains : *First*, that a proviso was inserted in his deed, imposing upon him the burden of supporting the whole fence upon the south line of the land conveyed ; and that he was induced to assent to its insertion upon the consideration, and false representation of the defendant, that the whole fence upon the east side of said land was to be maintained by the adjoining proprietor, Patrick McDaniels, by virtue of a written obligation to that effect, and that the plaintiff would be relieved from all liability to maintain

any fence upon that side; as well as by certain other false rep· resentations of the defendant in relation thereto. *Second,* that he delivered to the defendant, in part payment of said purchase money, three bonds of the United States, of one thousand dollars each, upon the agreement of the defendant that he would allow the full market value of the same, including premium and accrued interest at the time of the transfer thereof; and that the defendant refuses to allow and pay him the value of such premium and interest, amounting together to the sum of $315, that sum being in excess of the whole purchase money due to the defendant. *Third,* that, during the negotiations for the sale and purchase of said lands, the defendant pointed out the southeast corner of the premises proposed for sale, and represented that the land of the adjoining proprietor, McDaniels, extended to that point, and that the southerly line of the land sold would extend from the same corner to a point on the highway near a bridge; that the deed was accordingly written and accepted, describing the land as bounded on the south by a line running from the southwest corner of land of said McDaniels, at right angles to the westerly line of said McDaniels, to the highway, the defendant representing said line to be the same line previously pointed out by him to the plaintiff, and that it would strike the highway within one rod of said bridge; whereas in fact the land of said McDaniels did not extend so far as to the southeast corner of the defendant's land, as pointed out by him, and the south line, running at right angles therefrom to the highway, did not strike the same within one rod of said bridge · and the deed so written and accepted did not include a considerable part of the land so offered and represented to be sold, and intended and understood by the plaintiff to have been purchased by him; the part so excluded consisting of about seventeen acres of land, comprising the greater part of the meadow land in the tract as pointed out by the defendant.

The plaintiff, by his bill, does not seek to rescind the contract and conveyance; and does not offer to reconvey or release to the defendant the land conveyed; nor pray that he may be allowed to do so, and recover back the purchase money paid and

bonds delivered in payment. The relief prayed for is, that the defendant may be required to convey to the plaintiff the portion of the tract which was so, by fraud or mistake, omitted from the conveyance already made; to release the plaintiff from the proviso in his deed in regard to the fence; and to pay to the plaintiff the aforesaid amount of premium and interest upon said bonds.

The argument of the plaintiff is addressed mainly to the question of the equity jurisdiction of this court in cases of fraud or mistake like that alleged in the present suit. There can be no doubt upon that point. There is no ground upon which jurisdiction in equity is so readily entertained and freely exercised. It is given to this court without restriction, if the parties have not a plain, adequate and complete remedy at law. Gen. Sts. c. 113, § 2. Having jurisdiction, the question is as to the appropriate remedy. Jurisdiction in equity is often maintained, even when there is a remedy at law, for the sake of the greater facility it affords for adapting the proper relief to the peculiar necessities of each case. If the party suing is entitled to no relief other than that which may be had in an action at law, he is remitted to his remedy in that form. Even in a proper case for an appeal to equity, the remedy must be sought in reference to certain recognized rules and principles of chancery jurisprudence, and is often restricted by provisions of positive law. It is not administered arbitrarily. It must flow out of and accord with the agreements and obligations of the parties, and be adapted to the condition of facts to which it is to be applied.

In the present case, the principal ground of action is the fraud or mistake by which an important part of the subject matter of the alleged contract of sale and purchase was omitted from the deed of conveyance. If the allegations of the bill should be sustained by the proofs, they would show a clear right to have a rescission of the contract; and, upon reconveyance of the land covered by the deed, to have restoration of the bonds and money that were delivered in payment. But this relief the plaintiff does not seek; and his bill contains no offer to reconvey, without which he cannot have such relief. The prayer of the bill,

and its sole purpose in this particular, is, that the defendant may be compelled to convey to the plaintiff the seventeen acres of land which he alleges were included in the oral contract of sale; or represented by the defendant to be so included, but omitted from the deed.

If the case stood merely upon the oral contract of sale, with a conveyance of part and a neglect or refusal to convey another part of the land which was the subject of the alleged contract, we do not think it would be contended that the plaintiff could compel a conveyance of the other land, against a party denying the contract and setting up the statute of frauds. Courts are bound to regard that statute in equity as well as at law. The only remedy in equity, in such case, would be by a rescission of the entire contract, in which the aid of the court could be obtained, if necessary, upon proper grounds.

There has been no part performance here, such as, according to the general practice in courts of equity, would be held to take the case out of the statute of frauds.

1. Payment of the whole consideration is not sufficient for that purpose. *Hughes* v. *Morris*, 2 De Gex, Macn. & Gord. 356. *Thompson* v. *Gould*, 20 Pick. 134, 138. Browne on St. of Frauds, § 461. Fry on Spec. Perf. § 403. *Dale* v. *Hamilton*, 5 Hare, 369. *Clinan* v. *Cooke*, 1 Sch. & Lef. 22, 41. *Allen's Estate*, 1 W. & S. 383. *Purcell* v. *Miner*, 4 Wallace, 513.

2. Possession by the purchaser, under such a deed as was given to the plaintiff, is possession according to the title thereby conveyed; and is not such a possession as to afford ground for enforcing an alleged oral agreement to convey other land, claimed to have been embraced in the same oral agreement with that conveyed. *Moale* v. *Buchanan*, 11 Gill & Johns. 314. The plaintiff does not appear to have been let into actual possession of the seventeen acres, nor to have been induced to do any acts thereon, as owner, under his supposed rights as purchaser.

3. The conveyance of a portion of the land is neither a part performance, nor is it a recognition of the alleged oral contract, so far as it relates to the remaining land not included in the deed. On the contrary, it is in distinct disregard and implied

disavowal of such a contract.   The deed was given and accepted in execution of the entire contract of sale.   Its terms are in literal conformity with the agreement as made.   The plaintiff concedes that the southern boundary was stipulated to be described as it is written in the deed, to wit, running from the southwesterly corner of land of McDaniels, and at right angles with his westerly line, to the highway.

But the plaintiff claims that he in fact purchased the whole of a certain tract of land which included the seventeen acres now in dispute; that the description of the boundaries, as agreed upon and inserted in the deed, was so agreed on and inserted upon the representation of the defendant and the belief of the plaintiff that it did include said seventeen acres; and that the failure of the deed to embrace and convey that part of the land was occasioned either by the mutual mistake of the parties as to the position of the southwest corner of land of McDaniels, or else by the misrepresentation, deceit and fraud of the defendant in relation thereto.   In either alternative, the plaintiff contends that he is entitled to a reformation of the deed, to make it conform to the sale actually contracted by the parties.

Such a reformation not only requires a description of the subject matter of the sale, different from the express terms of the oral contract, but would enlarge the effect and operation of the deed, as a conveyance.   It involves the transfer of the legal title to land not covered by the deed already given.   It requires a new deed to be executed and delivered by the defendant to the plaintiff.   Whether that deed shall embrace the entire subject of the alleged contract of purchase, with a corrected description to make it conform to facts and abuttals as they were represented to be, or merely convey the seventeen acres omitted from the deed already given, the order for its execution will enforce the specific performance of a contract for the sale of lands, for which there exists no memorandum, note or other evidence in writing signed by the party to be charged therewith.   As to the seventeen acres in dispute, the obligation to convey them rests solely in the oral contract.   The defendant denies any contract which includes them.   The plaintiff seeks to establish such a con-

tract by parol evidence, and enforce it. The deed itself furnishes no means of making the correction sought for, and no evidence of the contract relied on for this purpose; nor is it in any sense an acknowledgment of the substance of the alleged oral agreement.

The power to rectify deeds and other written instruments undoubtedly exists in this court, under the clauses of the statute giving equity jurisdiction in cases of fraud, accident and mistake, or the clause giving it generally where there is no adequate remedy at law. It has been exercised in several cases. *Canedy v. Marcy,* 13 Gray, 373. *Metcalf v. Putnam,* 9 Allen, 97. But the power will be exercised in subordination to other fixed principles of law, and especially to statute provisions. If the rules, restricting the administration of judicial remedies, which are prescribed by the statute of frauds, were to be disregarded in this branch of equity procedure, it would open the door to all the forms of fraud which that statute was intended to prevent. The statute is not a mere rule of evidence, but a limitation of judicial authority to afford a remedy. It requires that contracts for the sale of lands, in order to be enforced by judicial proceedings, must be substantiated by some writing. This provision of law cannot be dispensed with merely for the reason that the want of such writing was occasioned by accident, mistake or fraudulent representations, unless some other ingredient enters into the case to give rise to equities, stronger than those which stand upon the oral contract alone, which estop the other party from setting up the statute.

It makes no difference whether the want of a writing was accidental or intentional, by way of refusal or by reason of mutual mistake; nor that there were false representations and a pretence of conveying the land, but a fraudulent evasion, by means whereof there was no conveyance in fact, and no proper written evidence of the agreement to convey. From the oral agreement there can be derived no legal right, either to have performance of its stipulations or written evidence of its terms. So long therefore, as the effect of the fraud or mistake extends no further than to prevent the execution, or withhold from the other party

written evidence of the agreement, it does not furnish sufficient ground for the court to disregard the statute of frauds, and enter into the investigation of the oral agreement for the purpose of enforcing it. And we do not see that the present case stands otherwise in this respect than it would if there had been no conveyance of any part of the land. As already shown, that conveyance was not in execution or recognition of the contract which the plaintiff seeks, by this bill, to enforce; and does not furnish any reason for taking the case out of the statute, on the ground of part performance. Indeed, the rule seems to be that no part performance, by the party sought to be charged, will take an agreement out of the statute of frauds, except in those cases where the statute itself provides for such effect. It is part performance by the party seeking to enforce, and not by the other party, to which courts of equity look, in giving relief from the statute. *Caton* v. *Caton,* Law Rep. 1 Ch. 137; *S. C.* Law Rep. 2 H. L. 127. *Mundy* v. *Jolliffe,* 5 Myl. & Cr. 167. *Buckmaster* v. *Harrop,* 7 Ves. 369. Browne on St. of Frauds, § 453.

When the proposed reformation of an instrument involves the specific enforcement of an oral agreement within the statute of frauds; or when the term sought to be added would so modify the instrument as to make it operate to convey an interest or secure a right which can only be conveyed or secured through an instrument in writing, and for which no writing has ever existed, the statute of frauds is a sufficient answer to such a proceeding; unless the plea of the statute can be met by some ground of estoppel, to deprive the party of the right to set up that defence. *Jordan* v. *Sawkins,* 1 Ves. Jr. 402. *Osborn* v. *Phelps,* 19 Conn. 63. *Clinan* v. *Cooke,* 1 Sch. & Lef. 22.

The fact that the omission or defect in the writing, by reason of which it failed to convey the land or express the obligation which it is sought to make it convey or express, was occasioned by mistake, or by deceit and fraud, will not alone constitute such an estoppel. There must concur, also, some change in the condition or position of the party seeking relief, by reason of being induced to enter upon the execution of the agreement, or to do acts upon the faith of it as if it were executed, with the

knowledge and acquiescence of the other party, either express or implied, for which he would be left without redress if the agreement were to be defeated.

Upon a somewhat extended examination of the decisions in regard to the effect of the statute of frauds upon the right to have equitable relief where the writing is defective, although many of them, where relief has been granted, hardly come within this definition in the apparent character of the particular facts upon which they were decided, yet we are satisfied that this principle of discrimination is the only one which can give consistency to the great mass of authorities upon this subject.

The case of *Smith* v. *Underdunck*, 1 Sandf. Ch. 579, is nearly like the present in its facts; and the opinion of the assistant vice-chancellor would seem to sustain the right of the plaintiff here. There was no fraud in the preparation of the deed. The judgment was based mainly upon the ground of part performance. It was held to be sufficient to take the case out of the statute, that the plaintiff had been let into possession as purchaser; and the opinion indicates that possession, under and in accordance with a deed of part, would be a sufficient possession of the whole for the purpose of requiring a deed of the remainder. But the decision rests upon the fact of possession by the plaintiff of the entire premises, including the part for which the bill was brought. The case arose upon demurrer to the bill, which of course admitted the contract and the alleged possession of the whole tract. The question of the statute of frauds did not arise therefore.

That the purchaser has been let into possession, in pursuance of a parol agreement, has been very generally recognized as sufficient to take it out of the statute. The reasoning by which this result was reached is far from satisfactory; and even where the rule prevails, there are frequent intimations that it is regarded as trenching too closely upon the spirit as well as the letter of the statute. If it were now open to settle the rule anew, we cannot doubt that it would be limited to possession accompanied with or followed by such change of position of the purchaser as would subject him to loss for which he could not

otherwise have adequate compensation or other redress; and that mere change of possession would not be held to take a case out of the statute. However it may be elsewhere, we are disposed to hold the rule to be so in Massachusetts.

Previously to the Sts. of 1855, *c.* 194, and 1856, *c.* 38, (Gen. Sts. *c.* 113, § 2,) the power of the court to direct specific performance was confined to written contracts. Rev. Sts. *c.* 74, § 8. That power was held to be strictly limited to contracts in which the whole obligation to be enforced was expressed in the writing. *Dwight* v. *Pomeroy,* 17 Mass. 303. *Brooks* v. *Wheelock,* 11 Pick. 439. *Leach* v. *Leach,* 18 Pick. 68. *Buck* v. *Dowley,* 16 Gray, 555. *Park* v. *Johnson,* 4 Allen, 259. The provision conferring that power specifically in case of written contracts is still retained in the Gen. Sts. *c.* 113, § 2. If the subsequent clauses, conferring jurisdiction generally, are to be construed, as we think they are, to extend the power of the court, so as to give relief by way of specific performance, either of contracts wholly unwritten, or of stipulations proved by parol and incorporated into a contract by judicial rectification of a written instrument, as in *Metcalf* v. *Putnam,* 9 Allen, 97, still that power ought to be exercised with constant reference and in subordination to the condition that "the party asking relief has not a plain, adequate and complete remedy at common law," which accompanied each enlargement of the equity power of the court, and which prefaces and closes the enumeration of those powers in the General Statutes. The force of this consideration is not lessened when applied to agreements within the statute of frauds.

Mere possession of land does not expose the party to loss or danger of loss without redress at law. The parol agreement of sale and purchase, with permission to enter, though not to be enforced as a valid contract of sale, will constitute such a license as will protect the party from liability for acts done before the license is revoked, and for all acts necessary to enable him to remove himself and his property from the premises after such revocation. If possession be taken without such permission, express or implied, it is no foundation for relief in equity, according to any of the authorities. The argument, for the admis-

sion of parol evidence to prove an agreement within the statute of frauds in order to enforce it in equity, drawn from the admissibility of such evidence to maintain a defence, either at law or in equity, seems to be based upon a misconception of the purport and force of the statute, which reaches no farther than to deny the right of action to enforce such agreements.

In this Commonwealth, the possession of land by a purchaser is not even notice to a third party of an unrecorded deed. The whole spirit of our laws in respect to real estate is against the policy of enabling parties to acquire or confer title, either legal or equitable, by mere parol and delivery of possession. The possession of the plaintiff therefore, even if it extended to the tract in dispute, is not sufficient to entitle him to relief against the statute.

The principle, on which courts of equity rectify an instrument, so as to enlarge its operation, or to convey or enforce rights not found in the writing itself, and make it conform to the agreement as proved by parol evidence, on the ground of an omission, by mutual mistake, in the reduction of the agreement to writing, is, as we understand it, that in equity the previous oral agreement is held to subsist as a binding contract, notwithstanding the attempt to put it in writing ; and upon clear proof of its terms the court compel the incorporation of the omitted clause, or the modification of that which is inserted, so that the whole agreement, as actually intended to be made, shall be truly expressed and executed. *Hunt* v. *Rousmaniere*, 1 Pet. 1. *Oliver* v. *Mutual Commercial Insurance Co.* 2 Curtis C. C. 277 But when the omitted term or obligation is within the statute of frauds, there is no valid agreement which the court is authorized to enforce, outside of the writing. In such case, relief may be had against the enforcement of the contract as written, or the assertion of rights acquired under it contrary to the terms and intent of the real agreement of the parties. Such relief may be given as well upon the suit of a plaintiff seeking to have a written contract, or some of its terms, set aside, annulled or restricted, as to a defendant resisting its specific performance. *Canedy* v. *Marcy*, 13 Gray, 373. *Gillespie* v

*Moon,* 2 Johns. Ch. 585. *Keisselbrack* v. *Livingston,* 4 Johns. Ch. 148.

Relief in this form, although procured by parol evidence of an agreement differing from the written contract, with proof that the difference was the result of accident or mistake, does not conflict with the provisions of the statute of frauds. That statute forbids the enforcement of certain kinds of agreement without writing; but it does not forbid the defeat or restriction of written contracts; nor the use of parol evidence for the purpose of establishing the equitable grounds therefor. The parol evidence is introduced, not to establish an oral agreement independently of the writing, but to show that the written instrument contains something contrary to or in excess of the real agreement of the parties, or does not properly express that agreement. *Higginson* v. *Clowes,* 15 Ves. 516. *Clowes* v. *Higginson,* 1 Ves. & B. 524. *Squier* v. *Campbell,* 1 Myl. & Cr. 459, 480.

But rectification by making the contract include obligations or subject matter, to which its written terms will not apply, is a direct enforcement of the oral agreement, as much in conflict with the statute of frauds as if there were no writing at all. *Moale* v. *Buchanan,* 11 Gill & Johns. 314. *Osborn* v. *Phelps,* 19 Conn. 63. *Elder* v. *Elder,* 1 Fairf. 80. In *Parkhurst* v. *Van Cortlandt,* 14 Johns. 15, 32, it is said that, " where it is necessary to make out a contract in writing, no parol evidence can be admitted to supply any defects in the writing." Per Thompson, C. J. Such rectification, when the enlarged operation includes that which is within the statute of frauds, must be accomplished, if at all, under the other head of equity jurisdiction, namely, fraud. *Irnham* v. *Child,* 1 Bro. Ch. 92. 1 Story Eq. § 770 *a.* *Davies* v. *Fitton,* 2 Drury & Warren, 225. *Wilson* v. *Wilson,* 5 H. L. Cas. 40, 65. *Manser* v. *Back,* 6 Hare, 443. *Clarke* v. *Grant,* 14 Ves. 519. *Clinan* v. *Cook,* 1 Sch. &. Lef. 22.

The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its performance, after the other party has been induced to make expenditures, or a change of situation in

regard to the subject matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds. *Hawkins* v. *Holmes,* 1 P. W. 770. *Parkhurst* v. *Van Cortlandt,* 1 Johns. Ch. 274; *S. C.* 14 Johns. 15. Browne on St. of Frauds, § 437 *et seq.* Fry on Spec. Perf. §§ 384–388. *Caton* v. *Caton,* Law Rep. 1 Ch. 137, 147; *S. C.* Law Rep. 2 H. L. 127. In the last named case it is said that " the right to relief in such cases rests not merely on the contract, but on what has been done in pursuance of the contract." Per Lord Chancellor Cranworth. See also 1 Story Eq. § 759. But the present case, as we have already seen, does not come within the principle of this ground of equitable relief.

Fraud, which relates only to the preparation, form and execution of the writing, is sufficient to vitiate the instrument so made. It may be set aside either in equity or at law. If it is made to include land not the subject of the actual sale, it is inoperative as to such land; and the fraud may be shown, for the purpose of defeating its recovery, in an action at law *Walker* v. *Swasey,* 2 Allen, 312, and 4 Allen, 527. *Bartlett* v. *Drake,* 100 Mass. 174. It has been questioned whether any other effect can be given to such fraud than to defeat the operation of the instrument altogether; and whether a court of equity can reform by giving it a narrower operation, as modified by parol proof, in a case within the statute of frauds. *Attorney General* v. *Sitwell,* 1 Y. & Col. Exch. 559. The difficulty is, that, if the fraud vitiates and defeats the instrument, then the modified agreement to be enforced must be that which is proved by parol evidence; and this seems to violate the statute. But the instrument, in such case, is not void. It is voidable only and that not at the election of the party who committed the fraud. He is not entitled to control the extent of the effect that

shall be given to his fraudulent conduct; and it is not for him to object that the fraud is availed of only to defeat the rights, which he has secured by fraud, beyond what he is fairly entitled to by the terms of the real agreement between the parties. When those are separable, and the nature of the case will admit of it, the court may enforce the written contract in accordance with its terms, giving relief against the fraudulent excess, or the clause improperly inserted. Parol testimony, used to defeat a title or limit an interest acquired under a written instrument, or to convert it into a trust, does not necessarily conflict with the statute of frauds. It has been held that an absolute deed may, in this mode, be converted, in equity, into a mortgage. *Washburn* v. *Merrill*, 1 Day, 140. *Taylor* v. *Luther*, 2 Sumner, 228. *Jenkins* v. *Eldredge*, 3 Story, 181, 293. *Morris* v. *Nixon*, 1 How. 118. 4 Kent Com. (6th ed.) 143. Whether this can be done in Massachusetts has not yet been decided. *Newton* v. *Fay*, 10 Allen, 505. But if it were to be so held, it would not be upon the ground of enforcing a parol agreement to reconvey; but upon the ground that such an agreement, together with proof that the deed was given and accepted only as security for a debt, made out a case of fraud, or trust, which would warrant a decree vacating the title of the grantee, as far as he attempted to hold contrary to the purposes of the conveyance. In such cases, the court acts upon the estate or rights acquired under the written instrument; and within the power over that instrument which is derived from the fraud or other ground of jurisdiction. But when it is sought to extend that power to interests in land not included in the instrument, and in relation to which there is no agreement in writing, the case stands differently. Fraud may vitiate the writing which is tainted by it; but it does not supply that which the statute requires. It may destroy a title or right acquired by its means; but it has no creative force. It will not confer title. In the absence of a legal contract by the agreement of the parties, it will not establish one, nor authorize the court to declare one, by its decree.

This distinction is illustrated by the analogous rule in regard to implied trusts. Gen. Sts. *c.* 106, § 19. Parol evidence may

charge the grantee of lands conveyed with a resulting or implied trust, which equity will enforce. But such evidence will not create a trust in lands already held by an absolute title.

A fraudulent misrepresentation, although sufficient to sustain an action for damages, cannot be converted into a contract to be enforced as such. Neither will it furnish the measure by which a written contract may be reformed. In this discussion we have assumed that there was a clear agreement between the parties, which the deed fails to carry out, and to which it might properly be made to conform, but for the obstacle in the statute of frauds.

It has been often asserted that where one, by deceit or fraudulent contrivance, prevents an agreement, intended to be put in writing, from being properly written or executed, he shall not avail himself of the omission, and shall not be permitted to set up the statute of frauds against the proof and enforcement of the parol agreement, or of the parol stipulation improperly omitted. But in our opinion this doctrine would practically annul the statute. The tendency of the human mind, when fraud and injustice are manifest, is to strain every point to compass its defeat; and to render full redress to the party upon whom it has been practised. *Mundy* v. *Jolliffe*, 5 Myl. & Cr. 167. *Taylor* v. *Luther*, 2 Sumner, 233. This influence has led to decisions in which the facts of the particular case were regarded more than the general considerations of public policy upon which the statute is founded and entitled to be maintained. Courts have sometimes regarded it as a matter of judicial merit to wrest from under the statute all cases in which the lineaments of fraud in any form were discernible. But the impulse of moral reprobation of deceit and fraud, however commendable in itself, is liable to mislead, if taken as the guide to judicial decrees.

We apprehend that in most instances where fraud, occasioning a failure of written evidence of an agreement, or particular stipulation, has been held to take the case out of the statute of frauds, there was some fact of prejudice to the party, or change of situation consequent upon the fraud, which was regarded as sufficient to make up the elements of an equitable estoppel. In

such case, the argument is transferred to the simple question of the sufficiency of the additional circumstance for that purpose. The cases most frequently referred to are those arising out of agreements for marriage settlements. In such cases the marriage, although not regarded as a part performance of the agreement for a marriage settlement, is such an irretrievable change of situation, that, if procured by artifice, upon the faith that the settlement had been, or the assurance that it would be, executed, the other party is held to make good the agreement, and not permitted to defeat it by pleading the statute. *Maxwell* v. *Mountacute*, Pre. Ch. 526. Browne on St. of Frauds, §§ 441–445.

Another class of cases are those where a party acquires property by conveyance or devise secured to himself under assurances that he will transfer the property to, or hold and appropriate it for, the use and benefit of another. A trust for the benefit of such other person is charged upon the property, not by reason merely of the oral promise, but because of the fact that by means of such promise he had induced the transfer of the property to himself. *Brown* v. *Lynch*, 1 Paige, 147. *Thynn* v. *Thynn*, 1 Vern. 296. *Oldham* v. *Litchfield*, 2 Vern. 506. *Devenish* v. *Baines*, Pre. Ch. 3. 1 Story Eq. § 768.

When these cases are cited in support of the doctrine that artifice or fraud in evading or preventing the execution of the writing is alone sufficient to induce a court of equity to disregard the statute and enforce the oral agreement, the subsequent change of situation or transfer of property, without which the deceit would be innocuous, seems to be overlooked, because it is not strictly in part performance of the agreement sought to be enforced. It must be manifest, however, that without such consequent act there would be no standing for the case in a court of equity. That which moves the court to a decree to enforce the agreement is not the artifice by which the execution of the writing has been evaded, but what the other party has been induced to do upon the faith of the agreement for such a writing. It is not that deceit, misrepresentation or fraud, of itself, entitles a party to an equitable remedy; but that equity

will interfere to prevent the accomplishment of the fraud which would result from the enforcement of legal rights contrary to the real agreement of the parties. Indeed the fraud which alone justifies this exercise of equity powers, by relief against the statute of frauds, consists in the attempt to take advantage of that which has been done in performance or upon the faith of an agreement, while repudiating its obligations under cover of the statute. When a writing has been executed, the courts allow the fraud or mistake, by which an omission or defect in the instrument has been occasioned, to defeat the conclusiveness of the writing, and open the door for proof of the real agreement. But the obstacle of the statute of frauds to the enforcement of obligations, or the security of rights not expressed in the instrument, remains to be removed in the same manner as if there were no writing. *Phyfe* v. *Wardell*, 2 Edw. Ch. 47. *Moale* v. *Buchanan*, 11 Gill & Johns. 314. The power to reform the instrument is not an independent power or branch of equity jurisdiction; but only a means of exercising the power of the court under its general jurisdiction in cases of fraud, accident and mistake.

We are aware that the limitation which we have undertaken to define has not been uniformly observed or recognized.

In *Wiswall* v. *Hall*, 3 Paige, 313, Chancellor Walworth granted a perpetual injunction, and ordered a deed of release of title to land omitted from a deed by fraud and secret contrivance. There was no discussion of the authorities, nor of the principles upon which the case was decided; and no reference to the statute of frauds; and the statute does not appear, by the report, to have been set up against the prayer for relief.

In *De Peyster* v. *Hasbrouk*, 1 Kernan, 591, a similar decision was made in the court of appeals in New York. Here again there is no reference to the statute of frauds, no discussion of the principles involved in the decision, and no authority or precedent cited except that of *Wiswall* v. *Hall*. The mortgagor, whose deed was reformed, put in no answer whatever. The defence was made by parties claiming under him, and the statute of frauds does not appear to have been pleaded. Denio, C. J., in

giving the opinion, proceeds to say : " It is unnecessary to refer to cases to establish the familiar doctrine, that, when through mistake or fraud a contract or conveyance fails to express the actual agreement of the parties, it will be reformed by a court of equity, so as to correspond with such actual agreement. The English cases have been ably digested by Chancellor Kent, and the principle has been stated with his accustomed care and accuracy, in *Gillespie* v. *Moon*, 2 Johns. Ch. 585."

But in *Gillespie* v. *Moon* the relief sought and granted was by way of restricting, and not by enlarging, the operation of the deed. Such relief would not, as already shown, conflict with the statute of frauds; and neither the discussion in that case, nor the citation of authorities, had reference to the bearing of the statute. of frauds upon the question of affording relief upon contracts relating to land. Indeed the English cases furnish but little aid upon that point, for the reason that the courts there have generally, without reference to the statute of frauds, refused to enforce written contracts with a modification or variation set up by parol proof. *Woollam* v. *Hearn*, 7 Ves. 211, and notes on the same in 2 Lead. Cas. in Eq. 404. *Nurse* v. *Seymour*, 13 Beav. 254.

The principle which was maintained by Chancellor Kent, and upon which the English authorities were cited by him in *Gillespie* v. *Moon*, was, that relief in equity against the operation of a written instrument, on the ground that by fraud or mistake it did not express the true contract of the parties, might be afforded to a plaintiff seeking a modification of the contract, as well as to a defendant resisting its enforcement. That proposition must be considered as fully established. 1 Story Eq. § 161. It is quite another proposition, to enlarge the subject matter of the contract, or to add a new term to the writing, by parol evidence, and enforce it. No such proposition was presented by the case of *Gillespie* v. *Moon*, and it does not sustain the right to such relief against the statute of frauds.

That Chancellor Walworth, in *Wiswall* v. *Hall*, did not intend to decide that the statute of frauds could be disregarded, if properly set up against such an enlargement of the operation

of the written contract, is apparent from the remarks of the same learned judge in the subsequent case of *Cowles* v. *Bowne* 10 Paige, 535. He says: " Whether a party can come into this court for the specific performance of a mere executory agreement for the sale of lands, which in its terms is materially variant from the written agreement between the parties that has been executed according to the statute, and where there has been no part performance or other equitable circumstance sufficient to take the case out of the statute of frauds, as a mere parol contract between the parties, is a question which it will not be necessary for me to consider in this case."

In *Gouverneur* v. *Titus*, 1 Edw. Ch. 480, there was a deed of land described as being in the northwest corner of a township, by mistake for the northeast corner. The grantor admitted the real contract, and had corrected the mistake by deed. The only question was, whether equity would enforce the corrected deed against the lien of a judgment creditor, who had notice of the mistake. In the opinion it is said: " It is a case in which this court would interfere, as between the immediate parties, to correct the mistake." The judgment was clearly right. The *dictum* we are disposed to question, unless the deed itself contained some other description by means of which the land might be identified and the mistake corrected.

In *Newsom* v. *Bufferlow*, 1 Dev. Eq. 379, a deed was reformed, which was made, by fraud, to include land not sold; and the fraudulent grantee was required to execute a reconveyance of the excess. The opinion contains a remark of the court, that this power may be exercised as well by inserting what was omitted, as by striking out what was wrongfully included. But this remark is clearly *obiter dictum*, and is not sustained by the authority cited, namely, *Gillespie* v. *Moon.*

In *Blodgett* v. *Hobart*, 18 Verm. 414, a mortgage was reformed by including other lands omitted by mistake. The statute of frauds was not set up in the answer, nor referred to in the opinion of the court; and the answer was considered by the court to be evasive in regard to the alleged agreement for security upon such other lands.

In *Tilton* v. *Tilton*, 9 N. H. 385, the court controvert the doctrine of such a limitation, as declared in *Elder* v. *Elder*, 1 Fairf. 80; but the decision did not involve the question so discussed. The case arose from an attempted partition between tenants in common of real estate. There was a written agreement for partition according to the award of certain arbitrators named; and the only question was, as to the effect of a substitution of other arbitrators by parol. Deeds had been executed, and the plaintiff had fully performed his part of the agreement. It was a case of part performance sufficient to take the case out of the statute of frauds, and was decided upon that ground. Besides, a partition of lands, though effected by mutual deeds of release, is not a contract for the sale of land.

*Craig* v. *Kittridge*, 3 Foster, 231, arose upon a partition, and was decided upon the authority of *Tilton* v. *Tilton*. *Smith* v *Greeley*, 14 N. H. 378, was a decree upon default, without argument or opinion, against the executors and heirs of a party whose deed, by mutual mistake, failed to include certain land sold. It does not appear whether there was written evidence of the agreement; nor whether there was possession or acts of performance. It was sufficient, perhaps, that the statute was not pleaded, and the default admitted the agreement.

*Caldwell* v. *Carrington*, 9 Pet. 86, was an agreement for exchange of lands, and stands entirely upon the ground of part performance.

Notwithstanding contrary decisions and *dicta*, we are satisfied that, upon principle, the conveyance of land cannot be decreed in equity by reason merely of an oral agreement therefor, against a party denying the alleged agreement and relying upon the statute of frauds, in the absence of evidence of change of situation or part performance creating an estoppel against the plea of the statute. This rule applies as well to the enforcement of such an agreement by way of rectifying a deed, as to a direct suit for its specific performance. We are satisfied also that this is the rule to be derived from a great preponderance of the authorities. *Whitchurch* v. *Bevis*, 2 Bro. Ch. 559. *Woollam* v. *Hearn*, 7 Ves. 211; 2 Lead. Cas. in Eq. (3d Am. ed.) notes,

[*414], Am. notes, 691. *Townshend* v. *Stangroom*, 6 Ves. 328 *Beaumont* v. *Bramley*, Turner & Russell, 41. See also 11 Gill & Johns. 314, 19 Conn. 63, and 1 Fairf. 80, already cited above; Adams Eq. 171, 172; *Churchill* v. *Rogers*, 3 T. B. Monr. 81; *Purcell* v. *Miner*, 4 Wallace, 513.

The prayer in regard to the fence stands differently. If that stipulation had been fraudulently inserted in the deed, the agreement being otherwise, the deed might be reformed by striking out that provision, or requiring a release of it, so as to make the writing correspond with the actual agreement. But, upon the allegations of the bill, there is no other agreement by which to reform the deed, and to which to make it conform. The plaintiff admits that the stipulation in the deed is precisely in accordance with the actual agreement. The fraud which he alleges relates only to the consideration or inducement upon which he was led to make that agreement; not to the form of the agreement itself. If that stipulation were to be stricken out, the writing would then not express the agreement actually made by the parties. The court cannot rectify an instrument otherwise than in accordance with the actual agreement. It cannot make an agreement for the parties. *Hunt* v. *Rousmaniere*, 1 Pet. 1, 14. *Brooks* v. *Stolley*, 3 McLean, 523. If the subject matter of this stipulation were of sufficient materiality, the fraud alleged might have the effect to defeat the whole instrument. But this effect is not sought. The plaintiff's remedy therefore is at law, in damages for the deceit and false representation.

The alleged agreement, in regard to the premium and accrued interest upon the bonds transferred in payment for the land, will not sustain a bill in equity. If such an agreement was made and broken, we see no reason why an action of assumpsit will not lie upon the agreement, or for the overpayment of the agreed price of the purchase. The remedy at law is as effectual as it can be in equity.

The entry must therefore be        .        *Bill dismissed.*